IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>vs. )<br>)<br>ROBERT B. LYNN, )<br>)<br>Defendant/Petitioner. ) | CR 09-279 (see CA 13-1693) |

MEMORANDUM OPINION

Petitioner Robert B. Lynn, on November 27, 2013, filed a pro se Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 383) and affirmation and memorandum of law in support thereof (Doc. No. 383, Att.). Upon consideration of this motion, and upon further consideration of the Government's response thereto (Doc. No. 391), filed on February 4, 2014, and Petitioner's reply to the Government's response (Doc. No. 397), filed on May 15, 2014, the Court denies Petitioner's motion for the reasons set forth below.

I. **Background**

On September 17, 2009, an indictment was returned by the Grand Jury charging Petitioner and several co-defendants with multiple counts of mail fraud, in violation of 18 U.S.C. § 1341, bank fraud, in violation of 18 U.S.C. § 1344, wire fraud, in violation of 18 U.S.C. § 1343, and conspiracy to commit fraud, in violation of 18 U.S.C. § 1349. On July 28, 2011, after a

1

lengthy jury trial, Petitioner was found guilty of ten of twenty-five counts.  On January 3, 2012, the Court sentenced him to a term of imprisonment of 180 months to be followed by five years' supervised release, and restitution in excess of $660 million.  (Doc. No. 339).  Petitioner subsequently appealed and challenged his conviction and sentence, arguing that the Government had committed reversible error based on a reference to Petitioner's Fifth Amendment privilege against self-incrimination, that the district court had abused its discretion in not ordering a mistrial, and that there was an unwarranted sentence disparity.  On March 11, 2013, the Third Circuit Court of Appeals affirmed Petitioner's conviction and sentence.

On November 27, 2013, Petitioner, acting pro se, filed the present motion pursuant to 28 U.S.C. § 2255.  On December 2, 2013, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist.  With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, and specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit

certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. When Petitioner failed to respond, the Court proceeded under his motion as filed. The Court will address the claims raised in Petitioner's motion below.

**II. Discussion**

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999). However, even a pro se plaintiff must be able to prove a "'set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

As noted, Petitioner brings his pro se motion pursuant to Section 2255. This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

In his motion and supporting documents, Petitioner claims he is entitled to relief under Section 2255 on the basis of ineffective assistance of counsel. In raising this claim, Petitioner identifies two specific areas in which his counsel was allegedly ineffective. First, he alleges that his counsel was ineffective by abandoning a previously outlined defense strategy and not calling defense witnesses. Second, he argues that his counsel improperly refused to allow him to testify on his own behalf. For the reasons that follow, the Court finds no merit in Petitioner's claims and finds that the record conclusively shows that he is not entitled to relief under Section 2255 on either of the grounds he alleges.[1]

A defendant seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result – that is, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S.

---

[1] Since the record itself conclusively shows that Petitioner is not entitled to relief, no evidentiary hearing is necessary.

668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90) (internal quotation marks and citations omitted). "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

### A. Failure to Call Witnesses

Petitioner first argues that his counsel was ineffective in failing to call expert witnesses to rebut the case against him. (Doc. No. 383 at 3). It should be noted, initially, that Petitioner's case arose from his involvement in a fraudulent scheme involving his employer, Le-Nature's, Inc. Central to the scheme was the fact that the company maintained two different sets of accounting books. One set of books was accurate, while

5

another set contained falsified information that was used fraudulently to obtain loans and investments.  Petitioner was a Le-Nature's officer who had substantial responsibility over the sales of the company's products and revenue, and he was also a member of the company's Board of Directors.  Although Petitioner was extremely knowledgeable about the company's true sales, accounts receivable and revenues, he routinely misrepresented the company's financial condition to its lenders, investors, the public and other third parties.  Part of Petitioner's role as a senior executive included frequent participation in presentations and conference calls, targeting lenders and investors, in which he prominently and substantially misrepresented the company's sales and business prospects.  The sophisticated scheme ultimately resulted in losses exceeding $660 million.

At trial, the Government presented ample evidence for the jury to find Petitioner guilty beyond a reasonable doubt. Petitioner's claims here, however, appear to stem originally from controversy surrounding one particular piece of evidence, a production forecast on which certain percentages had been handwritten ("production document").  At trial, when Petitioner's counsel cross-examined a Government witness about the production document, the witness testified that he did not recognize the handwriting it contained.  Petitioner's counsel

then attempted to question the witness about an interpretation of the handwriting's significance, and the Government objected, arguing that the witness was being asked to speculate. The Government commented about the possibility of Petitioner testifying, and Petitioner's counsel objected and moved for a mistrial, or, in the alternative, a curative instruction, arguing that the Government had violated Petitioner's Fifth Amendment privilege against self-incrimination. The Court denied the motion for mistrial, but provided a curative instruction for the jury.[2] Petitioner claims that his counsel, at this point in the trial, unreasonably decided to abandon his previously outlined defense strategy and chose not to call defense witnesses concerning the production document or any other matters.[3] The record conclusively shows, however, that Petitioner's arguments regarding his counsel's decision not to call witnesses ultimately fail to establish ineffective assistance of counsel.

As to the first prong of the Strickland inquiry, the reasonableness of counsel's conduct, it is important to note that the evidence Petitioner asserts should have been introduced

---

[2] On appeal, the Third Circuit concluded that the District Court did not err in denying the motion for a mistrial, and found that the curative instruction was sufficient to neutralize any error.

[3] Petitioner also claims, as discussed infra, that this exchange "peaked [his] desire to want to testify in his own defense." (Doc. No. 383, Att. Memo. at 10).

7

relates to trial strategy over which counsel generally has decision-making authority. See Virgin Islands v. Weatherwax, 77 F.3d 1425, 1433 (3d Cir. 1996). This Court must be deferential to counsel's tactical decisions, must not employ hindsight, and must give counsel the benefit of a strong presumption of reasonableness. See Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994). "[I]neffectiveness will not be found based on a tactical decision which had a reasonable basis designed to serve the defendant's interests." Werts v. Vaughn, 228 F.3d 178, 190 (3d Cir. 2000). Moreover, "[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003); Jacobs v. Horn, 395 F.3d 92, 118 (3d Cir. 2005).

Additionally, decisions regarding "which witnesses to call to testify are normally strategic decisions left to counsel." United States v. Griffin, No. 91-612, 1993 WL 34927, at *5 (E.D. Pa. Feb. 9, 1993) (citing Diggs v. Owens, 833 F.2d 439, 445-46 (3d Cir. 1987), cert. denied, 485 U.S. 979 (1988)). "Indeed, the decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the kind engaged in by defense attorneys in almost every criminal trial." United States v. Lively, 817 F. Supp.

453, 462 (D. Del. 1993) (citing United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 958 (1987)).

Nevertheless, Petitioner argues that the "'overwhelming evidence presented at trial' . . . went unrefuted by defense experts . . . as a result of counsel's deficient performance, as no defense experts were called to refute the government's evidence." (Doc. No. 397 at 6 (quoting Doc. No. 391 at ¶ 13)). Petitioner continues, "Surely, with rebuttal expert testimony . . . to put many of the documents presented at trial in their proper context, there exists a reasonable probability that the outcome might have been different." (Doc. 397 at 6).

Petitioner's allegations regarding exactly what experts would testify to, such as putting documents "in their proper context," and which "overwhelming evidence" they would rebut, are notably vague and ambiguous. He cannot rely, however, merely on vague speculation as to what this expert testimony would have been, but must demonstrate what the actual testimony would be. See Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006). Instead, Petitioner mentions giving his counsel the names of individuals he had "done some internet research on" and the name of a Dr. Lind, who Petitioner alleges could have testified on his behalf. (Doc. No. 383, Att. Aff. at ¶ 7). Further, Petitioner states only in the broadest terms possible that experts would have supported his case, and he gives no

9

details as to the basis for, or the methodology used in forming, the opinions such experts supposedly could have offered.

Petitioner suggests that expert testimony could have been offered to show that the underlying scheme was not a "Ponzi scheme" and that Petitioner did not participate in the "alleged Ponzi scheme." (Doc. No. 383, Att. Aff. at ¶ 7, Att. Memo. at 2-3). This argument is irrelevant, however, because the question whether the underlying scheme was a "Ponzi scheme," or whether Petitioner participated in such a scheme, is not of concern in Petitioner's case. The Government was not required to prove that the fraud scheme charged in the indictment was specifically a "Ponzi scheme." Rather, the essential trial issue underlying Petitioner's case was whether his statements "included knowing misrepresentations of Le-Nature's business volume" in violation of the federal fraud statutes listed in his indictment. (Doc. No. 391 at ¶ 11). This matter was conclusively proven at trial with extensive evidence, including "multiple witnesses and documents, and even a recording." (Doc. No. 391 at ¶ 11).

Thus, expert testimony on these issues would have been pointless since Petitioner's "comprehension, or lack thereof, of the Ponzi character of the scheme, was immaterial to his guilt: if the government proved he made knowing misrepresentation to obtain money, that was enough to establish his guilt without

10

regard to the concept of a Ponzi scheme." (Doc. No. 391 at ¶ 11). Petitioner's counsel presumably understood that these were not key factors in the case, and thus did not pursue building a defense along these lines. Even if counsel had attempted to dispute these matters using witness testimony, as Petitioner suggests he should have done, such attacks would have been meaningless since these issues did not need to be resolved in order to prove Petitioner's knowledge. To the extent that Petitioner believes that his counsel's representation was not sufficient, he frankly has provided no record evidence to overcome the presumption that his counsel's performance was reasonable. The mere fact that Petitioner may have disagreed with the manner in which he responded to the Government's prosecution of the case or his handling of witnesses does not establish that Petitioner's counsel's performance was objectively unreasonable. See United States v. Rodriguez, 68 Fed. Appx. 237, 243 (2d Cir. 2003). Petitioner has, therefore, failed to establish that his counsel's failure to call expert witnesses violated the reasonableness prong of Strickland.

Moreover, even if the record did show that the failure to call expert witnesses constituted unreasonable conduct, Petitioner has not established the second Strickland prong, that he suffered prejudice as a result. As noted, Petitioner's vague averments that expert witnesses could have put various documents

11

"in their proper context", or that expert witnesses could have testified that he was not involved in a true "Ponzi scheme," are simply insufficient to show prejudice in this case.

Furthermore, in determining whether the Strickland prejudice prong has been satisfied, courts are to consider the overall strength of the evidence provided by the Government. See Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (citing Strickland, 466 U.S. at 695). The case against Petitioner essentially boiled down to whether his statements, made to investors and lenders, included knowing misrepresentations of the business volume of Le-Nature's. The Court finds that this issue, which was central to the case against Petitioner, was clearly proven by abundant evidence, and that the vast amount of evidence presented supports the conclusion that there would not have been a different result even if expert testimony had been offered. He has thus not shown that there is a reasonable probability that another method of handling witnesses would have produced a different result in this case. Therefore, there is no basis for affording relief based on Petitioner's first ground.

### B. Failure to Allow Petitioner to Testify

Petitioner also claims that his counsel provided him with ineffective assistance in refusing to allow him to testify on

his own behalf.  In making this claim, Petitioner alleges that his counsel advised him "that the decision to testify rested with counsel," (Doc. No. 383 at 3), and that his counsel stated, "'It is my call and you are not going to take the stand, that's final!'"  (Doc. No. 383, Att. Aff. at ¶ 18).  Since Petitioner's counsel has declined to refute these claims in response to Petitioner's motion, the Court will, for purposes of argument, regard as true Petitioner's allegations that his counsel refused, over Petitioner's objections, to let him testify at trial.

"It is well established that the right of a defendant to testify on his or her behalf at his or her own criminal trial is rooted in the Constitution."  United States v. Pennycooke, 65 F.3d 9, 10 (3d Cir. 1995) (citing Rock v. Arkansas, 483 U.S. 44, 49-53 (1987)).  Because this right is personal, only the defendant may waive it.  See Jones v. Barnes, 463 U.S. 745, 751 (1983) (noting that a defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal").  Therefore, assuming that Petitioner's allegations concerning his counsel's statements are true, and counsel did not protect his client's right to decide whether he would testify, then Petitioner's counsel's performance fell "outside the wide range of professionally

competent assistance." Strickland, 466 U.S. at 690. Accordingly, the Court will assume that the first prong of Strickland has been met, and that Plaintiff could have demonstrated ineffective assistance of counsel with this claim.

To prevail under the Strickland test, however, Plaintiff must also show prejudice, and because he ultimately fails to do so, he cannot prevail on his claim that the failure to permit him to testify warrants judicial action. As previously noted, in order to establish that he was prejudiced by not testifying, Petitioner must show that, had he testified, there is a reasonable probability that the outcome of the trial would have been different. To support his claim, Petitioner alleges that he would have established that the handwriting on the production document (as well as handwriting on "several questionable exhibits," although he does not specify which exhibits he is referring to) was not his own,[4] and he generally asserts that he would have put various emails and conversations "in their proper context." (Doc. No. 383, Att. Memo. at 12).

Once again, in evaluating prejudice, courts are to consider the overall strength of the evidence provided by the Government. See Buehl v. Vaughn, 166 F.3d at 172. The Court finds, in this case, that the magnitude of the amount of evidence against Petitioner supports the conclusion that the results of the

---
[4] It should be noted, further, that the Government never claimed that the handwriting on the production document belonged to Petitioner.

14

proceedings would not have been different had Petitioner testified at trial.  As with his first claim, Petitioner fails to explain how—with the extent of the evidence offered to prove his knowledge in this case—his own testimony concerning handwriting on certain documents and vaguely putting evidence presented in context would have changed the outcome of his case.[5] Moreover, aside from the overwhelming amount of evidence presented against him, Petitioner's allegations as to his potentially exonerating testimony are so lacking in specificity, so vague, and so conclusory that no further discussion is warranted.  See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

Therefore, even if the Court assumes that Petitioner should have been permitted to testify, Petitioner at no point identifies proposed testimony that would have impacted the outcome of his case.  Because Petitioner fails to make a showing of prejudice with regard to this claim, he fails to meet the

---

[5] Although the discussion of the production document evidently sparked controversy at trial, the document itself was not relied upon particularly by the Government to prove their case.  It appears, from his motion and supporting documents, however, that Petitioner views this evidence as being uniquely important to the trial's outcome, perhaps because the verbal exchange arising from its introduction at trial formed the basis for his counsel's motion for a mistrial or curative instruction.  The production document was just one of many pieces of evidence the Government introduced in presenting its case, however, and the discussion stemming from the testimony about the document involved an issue that was entirely separate from the document itself.

second prong of the <u>Strickland</u> test.  Accordingly, there is no basis for affording relief based on Petitioner's second ground.

**III. <u>Conclusion</u>**

For all of the above-stated reasons, Petitioner's motion is denied in its entirety.  Further, this Court will not issue a certificate of appealability in this case.  A certificate of appealability may issue under Section 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right, and a certificate of appealability should not issue in this action.

<u>s/Alan N. Bloch</u>
United States District Judge

Date:  December 30, 2014

ecf: Counsel of record

cc: Robert Lynn, Fed. Reg. No. 30495-068
    FCI Loretto
    P.O. Box 1000
    Loretto, PA 15940